MEMPHIS BARREL, *etc.*, CO. *v.* WARD.

(*Jackson.* June 3, 1897.)

CORPORATION. *When insolvent so as to defeat levy upon its property.*

The levy of an instanter execution on the assets of a corporation which was hopelessly insolvent, after it had suspended business and refused to accept orders or otherwise exercise its functions, and after its directors had, by resolution, solemnly declared its insolvency and inability to further carry on its business, and instructed its president to have a general creditors' bill filed for the administration of its affairs and distribution of assets, gives the execution creditor no advantage over other creditors.

Cases cited and approved: Marr *v.* Bank, 4 Cold., 471; Mosby *v.* Williamson, 5 Heis., 278;. Comfort *v.* Patterson, 2 Lea, 671; Comfort *v.* McTeer, 7 Lea, 660; McLaren *v.* Roller Mill Co., 95 Tenn., 696; Smith *v.* Bradt Printing Co., 97 Tenn., 351; 86 Tex., 165.

Cited and distinguished: Bank *v.* Lumber Co., 91 Tenn., 18.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

PERKINS & WATSON for Barrel & Heading Co.

SCRUGGS & HENDERSON for Ward.

McALISTER, J. The question presented for determination upon this record is whether the Memphis

City Bank, by virtue of a judgment recovered before a Justice of the Peace and the levy of an execution upon certain property belonging to the Memphis Barrel & Heading Co.—an insolvent corporation—is entitled thereby to priority of satisfaction out of its assets.

The facts necessary to be stated are that, on October 21, 1895, the Memphis City Bank recovered a judgment before a Justice of the Peace against the Memphis Barrel & Heading Co., for the sum of $752. Affidavit was made that the company was about fraudulently to dispose of its property, and thereupon an instanter execution issued and was levied upon certain personal property belonging to said insolvent corporation.

This levy was made at 11:15, October 21, 1895. On the same day, and at 12:10, the Memphis Barrel & Heading Co. filed its bill in the Chancery Court of Shelby County, alleging its insolvency, and praying that its affairs might be administered and its assets distributed among its creditors, under the orders of said Court. This bill recited that on the morning of October 21, 1895, the directors of the Memphis Barrel & Heading Co. adopted a resolution declaring that said corporation was insolvent and unable to further carry on its business, and authorizing the president of the company to file a bill in the name of the company in the Chancery Court for the settlement of its affairs as an insolvent corporation.

It will be observed that, about one hour before the company filed its insolvent bill, the Memphis City Bank had recovered its judgment, and had caused an execution to be levied upon the property of the company. The Memphis Barrel & Heading Co. sought, by supplemental proceedings, to annul this judgment and vacate the levy, upon the ground that, at the time of said judgment and levy, said corporation was insolvent and its assets had become a trust fund for the benefit of all its creditors.

The Chancellor, upon final hearing, adjudged that the Memphis City Bank, by reason of the levy of its instanter execution, had acquired a priority of satisfaction over the other creditors of the Memphis Barrel & Heading Company, out of the property impounded by its execution.

The record shows that prior to October 17, 1895, the complainant corporation was engaged in the manufacture of barrels, kegs, boxes, etc., in the city of Memphis. On said date the secretary, treasurer, and general manager of the company, after flooding the business community with worthless commercial paper, absconded and fled to Honduras. An examination into the affairs of the company revealed the fact that it was irretrievably insolvent, and on October 18, 1895, the mill was shut down with a view of permanent suspension and a final liquidation of the affairs of the company. Ward, says one witness, was the general manager and financial head of the concern, and when he went, the concern practically

went with him. On the morning of October 21, 1895, the directors of the company ·assembled and adopted the following resolution, to wit:

"WHEREAS, The Memphis Barrel & Heading Company is unable to meet its pressing liabilities, and is, in the opinion of the directors, now insolvent, and unable to· further carry on its business, it is

"*Resolved*, That the president of said company be, and he is hereby, authorized to file a bill, in the name of said company, in the Chancery Court of Shelby County, Tenn., to administer the assets of said corporation."

In pursuance of said resolution, and at ten minutes past twelve o'clock on said October 21, 1895, a general creditors' bill was filed in behalf of said corporation, which was ·sustained by the Chancellor, and a receiver appointed to take charge of its assets. On the same day, to wit, October 21, 1895, the Memphis City Bank recovered a judgment before a Justice of the Peace against said Memphis Barrel & Heading Company for the sum of $752, and, at eleven o'clock and fifteen minutes, upon affidavit filed that the company was about, fraudulently, to dispose of its property, an instanter execution issued, which was levied on certain personal assets of the corporation. A petition was thereupon filed by the Memphis Barrel & Heading Company in said cause, reciting the facts just mentioned; whereupon the Memphis City Bank was enjoined

from further proceeding under the levy of its in-
stanter execution.

The first assignment of error is that, under the
facts and circumstances of this case, the Chancellor
erred in adjudging that the Memphis City Bank ac-
quired any prior right to said assets by reason of
the levy of said instanter execution. We are of opin-
ion this assignment of error is well made. The facts
disclosed in this record demonstrate that when the
Memphis City Bank sought by instanter execution
to impound a portion of the assets, the company was
not a going concern, but was hopelessly insolvent
and had permanently ceased to do business. As stated
by Mr. Wellford, vice president of the company,
" that, by the flight of A. K. Ward, secretary,
treasurer, and general manager, said corporation was
left helpless and inanimate, unable to transact any
business whatever, having neither money nor credit
by which it might prosecute further operations; that,
from October 18, 1895, there has been a complete
cessation of business, which said cessation is and was
regarded, prior to October 21, 1895, necessarily per-
manent; that all orders received by said company
subsequent to Ward's departure were refused on ac-
count of the corporation's total inability to continue
operations as aforesaid."

The settled law of this State is that the assets
of an insolvent corporation become, from the date
of its assured insolvency, a fixed trust fund for
equal *pro rata* distribution among its creditors, un-

less otherwise provided by law or fixed by valid contract. *Marr* v. *Bank*, 4 Cold., 471; *Mosby* v. *Williamson*, 5 Heis., 278; *Comfort* v. *Patterson*, 2 Lea, 671. There must, however, be some positive act of insolvency, such as the filing of a bill to administer its assets, or the making of a general assignment, or a permanent cessation to do business. *Comfort* v. *McTeer*, 7 Lea, 660.

In *Tradesman Pub. Co.* v. *Knoxville Car Wheel Co.*, 11 Pick., 634, we held "that the execution of trust deeds by a corporation, conveying all its property to trustees, was a confession of insolvency, and *ipso facto* converted its assets into a trust fund for the benefit of all its creditors." And again, in *McLaren* v. *Roller Mill Co.*, 11 Pick., 696, we held, viz.: "The general principle is well settled that the property of a private corporation is not charged by law with any direct trust or specific lien in favor of general creditors, and such a corporation, so long as it is in the active exercise of its functions, may exercise as full dominion and control over its property as an individual. So a creditor, while the corporation is a going concern, although actually insolvent, is entitled to pursue the ordinary legal or equitable remedies for the enforcement of his claim. But when a corporation is dissolved, or determines to discontinue the prosecution of its business, or makes a general assignment, or commits any other overt act indicative of positive and assured insolvency, its property is thereafter affected by an equi-

15 P—12

table lien or trust for the benefit of all its creditors,
and individual creditors may be restrained, by in-
junction, against the appropriation of corporate as-
sets to the payment of their claims." *Smith* v.
*Bradt Printing Co.*, 13 Pick., 351.

So, in the case of *Marr* v. *Bank*, 4 Cold., 485,
Judge Milligan, delivering the opinion of the Court,
said that "after the admitted insolvency of the
bank and the nonuser of its franchises, the officers
or agents of the corporation, in whose hands the
assets remained, held them as quasi-trustees for the
creditors," etc., etc.   "A single creditor," continues
the Court, "would, by no pretended legal technical-
ity, be allowed to apply the fund or appropriate it
all to his benefit, and thereby totally defeat all the
others."   See, also, *Lyons-Thomas Hardware Co.* v.
*Perry Stove Mfg. Co.*, 86 Tex., 165; *Casey* v. *Wads-
worth*, 38 Am. & Eng. Cor. Cas., 171.

As already stated, the Memphis Barrel & Heading
Co. was, on October 18, 1895, hopelessly insolvent,
and had no reasonable expectation of redeeming its
fortunes.   It therefore suspended business, and re-
fused to accept orders or otherwise exercise its func-
tions, and thereafter, on the morning of October 21,
its directors assembled, and, by resolution, solemnly
declared its insolvency and inability to further carry
on its business, and instructed its president to cause
to be filed in the Chancery Court a general cred-
itor's bill for the administration of its affairs and
distribution of its assets.   We think it very plain,

under the authorities, that from this time the assets of said insolvent corporation became a trust fund for the benefit of all its creditors, and that no one creditor was entitled to priority of satisfaction of his claim out of the corporate assets, notwithstanding his effort to fix a lien by the levy of his execution. The general rule is well settled that no lien by attachment, execution, or other legal process, can be obtained upon trust property, except subject to existing equities.

The case of *Bank* v. *Lumber Co.*, 7 Pickle, 13, relied on by counsel for the bank, is not applicable in this case, for the reason that the creditor in that case had sued out his attachment and fixed a lien on the property before the corporation had ceased to transact business, and prior to the commission of any overt act indicative of positive or assured insolvency. In that case it appeared that the attachment was levied two weeks before the company made a general assignment. The Court remarked: "There was no stop, no suspension of business, no closing of doors. On the contrary, there was no lack of active operations on the part of the company, and its officers were hopeful of success."

The decree of the Chancellor is therefore reversed, the levy of the execution in favor of the Memphis City Bank upon the assets of complainant company is vacated, and the bank is perpetually enjoined against the enforcement of said levy. The bank will pay the costs of the appeal.