W. W. WILLIS *et al. v.* MANN CONST. CO.

(*Knoxville.* September Term, 1921.)

1. **STATUTES.** Act amending prior act by mere reference to chapter number and year of passage held void.

   A mere reference in an amendatory act to the former act by chapter, number and year of passage does not comply with Constitution, article 2, section 17, requiring a recital of the title or substance of the amended law; and hence Acts 1905, chapter 414, purporting to amend Acts 1897, chapter 78, merely referring to it as "chapter 78 of the Acts of 1897," is void for failure to comply therewith. (*Post, pp.* 324, 325.)

   Acts cited and construed: Acts 1905, ch. 414; Acts 1897, ch. 78, Acts 1899, ch. 182; Acts 1883, ch. 18.

   Cases cited and approved: Memphis Street Railway v. State, 110 Tenn., 608; Burnett v. Turner, 87 Tenn., 124; Drug Co. v. Stone, 129 Tenn., 608.

   Code cited and construed: Secs. 1135a-1135a3 (T.-S.).

   Constitution cited and construed: Sec. 7, art. 2.

2. **CONSTITUTIONAL LAW.** Act imposing laborers' lien on effects of corporations and partnerships only held not unconstitutional.

   Acts 1897, chapter 78, and Acts 1883, chapter 18, imposing a laborers' lien on the effects of corporations and partnerships only, *held* not unconstitutional as an unlawful discrimination against employees of individuals, who have a free and unembarrassed right to subject their employer's property to the satisfaction of their demands. (*Post, pp.* 325, 326.)

   Acts cited and construed: Acts 1897, ch. 78; Acts 1883, ch. 18.

3. **ASSIGNMENTS.** Contractor's control of funds owing it held to defeat alleged equitable assignment thereof.

Willis v. Mann Const. Co.

Where road commissioners on each pay day paid the construction contractor for all work, which in turn gave its own checks to subcontractors for amounts due them, the latter, after the contractor's insolvency, had no prior claim on its funds in the hands of the commissioners by reason of an agreement of its president to appropriate to them a portion of such funds; the assignor's retention of control of the funds being fatal to the claim of an equitable assignment. (*Post, pp.* 326, 327.)

4. ASSIGNMENTS. In absence of notice to county of contractor's assignment of subcontractors of amounts due it, they have no prior claim on funds in commissioner's hands.

In the absence of notice to the county of alleged assignments by a contractor to subcontractors of amounts received from the commissioners for the construction of a road, such subcontractors have no prior claim against such funds, after the contractor's insolvency; an assignment of a chose in action not being complete without notice to the debtor. (*Post, pp.* 327, 328.)

Cases cited and approved: Mutual Protection Ins. Co. v. Hamilton & Goram, 37 Tenn., 269; Lambreth & Co. v. Clark & Brown, 57 Tenn., 32; Dews v. Olwill, Ex'r., 62 Tenn., 432; Flickey v. Loney, 63 Tenn., 169; Cates v. Baxter, 97 Tenn., 443; Dillingham v. Ins. Co., 120 Tenn., 302; McGuffey v. Johnson, 77 Tenn., 555; Wharton v. Lavender, 82 Tenn., 178; Crudgington v. Hogan, 105 Tenn., 448.

Case cited and distinguished: Clodfelter v. Cox, 33 Tenn., 330.

5. MARSHALING ASSETS AND SECURITIES. Insolvent contractor's creditors not postponed to subcontractors in distribution of funds in hands of debtor to benefit sureties on contractor's bond.

Brokers, to whom a road contractor agreed to pay a commission on the sale of the road bonds by the county, will not be postponed to subcontractors in distribution of funds owed to the contractor by the road commissioners, in order to benefit the sureties on the contractor's bond executed in accordance with Thompson-Shannon Code, sections 1135a-1135a3, nor can they force the subcontractors to look first to the bond and deprive the sureties of the benefit of the application of a proportionate part of the funds to the sub-

Willis v. Mann Const. Co.

contractors' claims; the doctrine of marshalling assets not being enforced to the prejudice of a third party. (*Post, pp.* 328, 329.)

Cases cited and approved: Gilliam v. McCormack, 85 Tenn., 597; Galliher v. Galliher, 78 Tenn., 23.

6. CORPORATIONS. No lien on assets of insolvent corporation which had ceased to do business when attachment levied.

Where, at the time creditors of a road construction company levied an attachment on moneys due it in the hands of the county road commissioners, it was insolvent and had permanently ceased to do business, and its contract, which was the only business it had, had been abandoned or taken away from it, such attachment fixed no lien on its assets, which had become a trust fund for all its creditors. (*Post, pp.* 329-332.)

Case cited and approved: Memphis Barrell Co. v. Ward, 99 Tenn., 177.

7. CORPORATIONS. Where corporation has not committed act of insolvency and was doing business, filing bill to subject assets in hands of debtor to satisfaction of creditors' claim fixed on lien entitling complainants to priority.

Since a lien against the assets of a corporation may be fixed, without attachment, by the filing of a bill to subject funds due it in the hands of a third party to the satisfaction of creditors' claims only where the inherent jurisdiction of equity, or the jurisdiction extended by statutes, such as Thompson-Shannon Code, sections 6091-6097, is invoked, filing such a bill by other than judgment creditors, for other purposes than to set aside a fraudulent conveyance or enforce a trust or lien, does not fix a lien on the assets entitling complainants to priority over other creditors in the distribution thereof, where the corporation had committed no overt act of insolvency and had not ceased to do business at such time; a court of equity being without jurisdiction to subject an equitable interest to the satisfaction of a purely legal claim, though complainants, under Acts 1877, chapter 97, may recover on their debt and also have an attachment of such assets in the chancery court, which in such case exercises the jurisdiction of a court of law. (*Post, pp.* 332, 333.)

Willis v. Mann Const. Co.

Acts cited and construed: Acts 1877, ch. 97.

Cases cited and approved: McKeldin v. Gouldy, 91 Tenn., 677; Allen v. Gilliland, 74 Tenn., 521.

Code cited and construed: Secs. 6091-6097 (T.-S.).

8. **CREDITORS' SUIT.** In simple creditors' suit to reach moneys in hands of third party bill of interpleader held sustainable as general creditors' bill.

In a suit by a simple creditor to subject moneys in the hands of county road commissioners to the satisfaction of complainants' claims against a road construction company, which, at the time of the filing of the bill, had committed no overt act of insolvency and had not ceased to do business, so that, no lien being fixed, complainants were entitled to no preference as against subcontractors to whom the contractor owed money, *held*, that the subcontractors' bill of interpleader should be sustained as a general creditors' bill, in order to remove any question of the court's jurisdiction over the entire amount of the funds in controversy. (*Post, pp.* 333, 334.)

FROM GREENE.

Appeal from the Chancery Court of Greene County.— HON. HAL H. HAYNES, Chancellor.

SHOUN, SWINGLE & TAYLOR and FOWLER & FOWLER, for appellants.

SUSONG & BIDDLE and CATES, SMITH & TATE, for defendants.

145 Tenn.—21.

Mr. Justice Green delivered the opinion of the Court.

The Mann Construction Company entered into a contract with Greene county, through the county's road commission, to construct a number of roads, involving an expenditure of about $200,000. To obtain money for this purpose Greene county, under legislative authority, issued $200,000 of bonds. It was necessary to sell these bonds to go on with the work, and the Mann Construction Company was vitally interested in this sale, so the construction company entered into a contract with W. W. Willis, of Knoxville, and Caldwell & Co., of Nashville, bond brokers, whereby it agreed to pay these brokers three per cent. of the amount realized on the bonds if a specified sale was made. At the time the effort was made to float said bonds, the market was greatly demoralized.

The brokers sold the bonds according to contract, but the Mann Construction Company failed to pay them.

This bill was filed by Willis and Caldwell & Co., in which they alleged the facts above stated, and further set out that there was due to the construction company from Greene county a certain sum of money for the work done by the construction company and its subcontractors during the month of June, 1920, and a further sum held back by the county as retainage out of the estimates on the whole work. The bill was filed July 1, 1920, and sought to subject the June estimates of the construction company and the retainage in the hands of the county or its road commissioners to the satisfaction of complainants' demand against the construction company. An injunction was obtained restraining the county and road commis-

sioners from disposing of these funds. The bill contained other averments which will be noticed later.

· After this bill was filed a number of· persons having claims for labor done for the construction company on said roads filed petitions in the cause, asserting that they were entitled to a lien and a prior claim on all the assets of the construction company, including the fund above mentioned, under statutes enacted to this end.

Certain subcontractors under the construction company filed petitions, averring that the construction company had made to them equitable assignments of the greater part of the aforesaid funds in the hands of Greene county or its road commissioners. These subcontractors also sought to hold the sureties upon a bond which the Mann Construction Company had executed in accordance with chapter 182 of the Acts of 1899 (Thompson's Shannon's Code, sections 1135a-1135a3). This bond was also conditioned to save Greene county harmless from any damage by reason of the contractor's default.

Some other pleadings were filed and the controversies were brought to issue, proof taken, and the cause heard by the chancellor. He found that the Mann Construction Company was an insolvent corporation and gave the laborers the first claim on the funds in the hands of the road commissioners and ·directed that the balance be applied on the claims of the subcontractors, and that the subcontractors have a decree against the sureties on the construction company's bond for any balance remaining due to them after the funds in the hands of the road commissioners were exhausted.

. This left nothing for the complainants Willis and Caldwell & Co., except a judgment against the Mann Con-

struction Company. These complainants, and these alone, have appealed from the decree of the chancellor and assigned errors which raise a number of close questions.

It is first insisted on behalf of the complainants that the chancellor erred in giving the laborers a prior claim on the funds in the hands of the road commissioners. The chancellor based his action on our statutes, which undertake to provide a lien in favor of laborers of this character. It is urged that these statutes are unconstitutional.

The first one is chapter 18 of the Acts of 1883, which provides a lien for all employees and day laborers of any corporation or partnership on the corporation or firm property for their labor and services.

The scope of this lien was somewhat extended by an amendment to the act of 1883 contained in chapter 78 of the Acts of 1897. It was still limited by the latter act, however, to employees and laborers of corporations and partnerships.

Chapter 414 of the Acts of 1905 undertook to amend chapter 78 of the Acts of 1897 by extending this lien to employees and laborers of individuals engaged in mercantile lines of business. The only reference contained in chapter 414 of the Acts of 1905 to the act which it undertook to amend was "chapter 78 of the Acts of 1897." The act of 1905 did not, in its caption or otherwise, recite the title or substance of the law to be repealed, revised or amended. A mere reference to a former act proposed to be repealed or amended by chapter number and year of passage is not a sufficient compliance with section 7 of article 2 of the Constitution. *Memphis Street Railway* v. *State,* 110 Tenn., 608, 75 S. W., 730; *Burnett* v. *Turner,* 87 Tenn., 124, 10 S. W., 194.

Willis v. Mann Const. Co.

This defect in chapter 414 of the Acts of 1905 was pointed out by this court in *Drug Co.* v. *Stone,* 129 Tenn., 608, 167 S. W., 864. The act was not there adjudged to be unconstitutional because such a judgment was not necessary to the decision of the case before the court. The question is directly presented to us, however, and we are constrained to hold chapter 414 of the Acts of 1905 to be unconstitutional and void for the reasons stated.

This, however, leaves chapter 78 of the Acts of 1897 and chapter 18 of the Acts of 1883 to be considered. It is argued that these acts are unconstitutional, because they only undertake to impose this laborers' lien upon the effects of corporations and partnerships and not upon the effects of individuals engaged in business. It is said that this is an unlawful discrimination, and that chapter 414 of the Acts of 1905 was enacted to remedy this situation.

Statutes giving to laborers of corporations a lien on the corporate effects for their services are quite common and have been uniformly sustained. This classification rests on a reasonable basis. 14 A. C. J., 1021, and cases cited. We think likewise a statute which gives a lien to laborers of partnerships and not to individuals may be upheld.

The laborer employed by an individual, or any creditor of an individual, has a free and unembarrassed right to subject all the property of that individual to the satisfaction of his demand. On the other hand, the laborer or creditor of a partnership does not have such a right to go upon the individual assets of the members of the firm. He is postponed in that respect to the claims of the individual creditors of the partners. His only clear and unembarrassed right is against the partnership assets or property.

These circumstances, we think, furnish a reasonable basis for distinction between a partnership in business and an individual in business and between the laborers and employees of the one and of the other.

It follows that the chancellor was correct in awarding to the laborers a prior claim on the assets of the Mann Construction Company.

The subcontractors claim that they are entitled to the next claim upon the aforesaid funds by reason of an equitable assignment of such funds *pro tanto,* which they say was made to them by the Mann Construction Company.

Under skillful questioning by their counsel, these subcontractors made out a semblance of an agreement on the part of the president of the construction company to appropriate to them a portion of the funds to be paid the construction company by the road commissioners. The agreement with all these subcontractors was that they should do the work let to them at the same prices which the construction company was to receive from the county, less eight per cent. It was the custom on each pay day for the commissioners to pay the construction company the amount of the estimates for the previous month, less the stipulated retainage, and the construction company in turn, on or about the same day, gave its own checks to the subcontractors for the several amounts due them.

No written assignments were made in favor of these subcontractors, nor do we think the proof is sufficient to show parol assignments.

Under the general rule, it is fatal to the claim of an equitable assignment if the assignor retains any control of the subject of the assignment. 5 C. J., 912. In this case the assignor did retain control and got the estimates each

month itself, and thereafter paid out to the subcontractors what was due them.

Moreover, in Tennessee, an assignment of a chose in action is not complete without notice of the assignment to the debtor. This is contrary to the rule in some jurisdictions, but is in accord with the English rule as well as the rule prevailing in certain states of the Union. Speaking on this subject, this court said:

"The latter we consider as the more reasonable and safe practical rule, and have accordingly held, on more than one occasion, that the assignment of a chose in action is not complete, so as to vest the title absolutely in the assignee, until notice of the assignment to the debtor; and this not only as regards the debtor, but likewise as to third persons. And, therefore, as between successive purchasers or assignees of a chose in action, he is entitled to preference who first gives notice to the debtor, although his assignment be subsequent to that of the other. To perfect the assignment, not merely as against the debtor, but also as against creditors and subsequent *bona fide* purchasers, notice must be given. Hence it follows that an attachment by a creditor, in the period intervening between the assignment and the notice, will have preference." *Clodfelter* v. *Cox,* 33 Tenn. ( Sneed), 330, 60 Am. Dec., 157.

This rule applies to the transfer of equitable interests. Not to assignments of negotiable instruments or instruments assignable by law so as to pass the legal interest and entitle the assignee to sue in his own name. *Mutual Protection Ins. Co.* v. *Hamilton & Goram,* 37 Tenn. (5 Sneed), 269.

*Clodfelter* v. *Cox* has been consistently followed. Some of the cases are *Lambreth & Co.* v. *Clark & Brown,* 57 Tenn.

(10 Heisk.), 32; *Dews* v. *Olwill, Ex'r,* 62 Tenn. (3 Baxt.), 432; *Flickey* v. *Loney,* 63 Tenn. (4 Baxt.), 169; *Cates* v. *Baxter,* 97 Tenn., 443, 37 S. W. 219; *Dillingham* v. *Insurance Co.,* 120 Tenn., 302, 108 S. W., 1148, 16 L. R. A. (N. S.), 220.

*In McGuffey* v. *Johnson,* 77 Tenn. (9 Lea), 555, the appropriation was to be made out of the proceeds of a note when collected. McGuffey was directed .to get the note out of the bank where it had been left for collection, and "had instructions" to apply the proceeds as claimed by the assignee. Under the facts of this case McGuffey was the debtor, or was to become the assignor's debtor, and there was an admission from him of notice as aforesaid.

*Wharton* v. *Lavender,* 82 Tenn. (14 Lea), 178, and *Crudgington* v. *Hogan,* 105 Tenn., 448, 58 S. W., 642, were unusual cases in which the equitable appropriation had already been made before any question was raised.

We think none of our cases departs at all from the rule of *Clodfelter* v. *Cox,* and in the case before us there is no pretense that notice of these alleged assignments to the subcontractors was ever given to Greene county or to the road commissioners.

It follows, therefore, that these alleged assignments, in no aspect of the case, had been perfected so as to give to the subcontractors a prior claim on the funds involved at the time the complainants filed their bill.

The chancellor held that there was no equitable assignment, but for some reason thought the subcontractors were entitled to reach these funds before complainants in order to work out some supposed equity of the sureties on the general contractor's bond. He suggested that these sureties were entitled to compel the subcontractors to

exhaust the funds in controversy before coming on the sureties, and that the sureties were entitled to keep the complainants off this fund until the subcontractors had exhausted it.

We are unable to see any basis for this idea. This is no case for marshaling assets. The complainants have but one fund to which they may look, to-wit, the fund in the hands of the road commissioners. We see no reason why complainants should be postponed to the subcontractors in the distribution of these funds in order to benefit the sureties on the general contractor's bond. On the other hand, the complainants cannot force the subcontractors to look first to the bond and deprive the sureties of the general contractor of the benefit of the application of a proportionate part of these funds to the subcontractors' claims.

The doctrine of marshaling of assets is purely equitable, and will not be enforced to the prejudice of a third party. *Gilliam* v. *McCormack*, 85 Tenn., 597, 4 S. W., 521.

*Galliher* v. *Galliher*, 78 Tenn. (10 Lea), 23, is not in point. The creditor there had two securities and a subrogation was worked out in favor of a surety which did not affect the creditor's rights.

We are therefore of opinion that the subcontractors had no prior claim on the funds in the hands of the road commissioners, and the question then remains whether these funds shall be divided ratably between the complainants and the subcontractors, or whether the subcontractors must be postponed to the complainants.

This depends on whether the Mann Construction Company was a going concern at the time complainants tried to fix a lien on its assets, or whether said corporation had

reached a stage where its assets were a trust fund for the benefits of all its creditors.

This question is involved in much difficulty. The complainants' bill herein was filed July 1, 1920. No attachment, however, was levied on the assets of the construction company until July 12, 1920.

The proof shows that Mr. Horace Mann, the president of the construction company, left Greene county prior to July 1st. The corporation had been engaged in road work in that county for about two years, and maintained its office and *situs* in said county. The bill charges that the corporation had no other asset except its contract with Greene county, and that the complainants had no other means of satisfying their demands except by subjection of the funds in the hands of the road commissioners. The bill further avers that it was the purpose of the corporation to defeat the collection of the complainants' claim, and that the corporation was "in a failing condition and that its failure is imminent and impending." It was further stated that the corporation was about to abandon its contract with Greene county or to be discharged therefrom, and that the work done in June, 1920, would be the last work done under the contract. It was reiterated that the construction company had no other asset except this contract and what was coming to it thereunder.

Before the bill was filed, and during the month of June, 1920, it seems that the subcontractors were all pursuing their work under their contracts with the construction company; that the construction company was doing some work directly; and that its secretary was in its office in Greene county. Things seemed to be going on about as usual.

The evidence is not very clear, but we gather from the record that after the bill was filed no further work was done by the Mann Construction Company directly. The estimates for June were taken up by the county's engineer on July 3d, and some payments were made by agreement of attorneys. Thereafter, as the record indicates, while estimates were taken up by the engineer in the name of the construction company, the subcontractors were paid directly by the county, and received the full amount that would have gone to the construction company. It has been heretofore stated that the subcontractors had been receiving a smaller amount from the construction company than the construction company received from the county.

So we think that after July 3d, and certainly after July 10th, the Mann Construction Company had permanently ceased to do business. According to the bill, the only business it had was this Greene county contract, and this contract had been abandoned by it or taken away from it.

On July 12th Judge Lindsay, attorney for the Mann Construction Company, appeared before the road commissioners and announced that his client was insolvent and could not go on with the contract.

Its president had gone, it had ceased to work, its only contract was lost, and its only asset, according to the bill, was tied up.

This was the situation on July 12, 1920, when the complainants levied their attachment. At that time the assets of the corporation had become a trust fund for all its creditors, by reason of its cessation of business, and complainants' attachment could fix no lien on such assets.

*Memphis Barrel Co.* v. *Ward,* 99 Tenn., 177, 42 S. W., 13, 63 Am. St. Rep., 825, and cases therein reviewed.

. On July 1st, however, when the complainants' bill was filed, we do not think, under the proof, that the corporation had committed an overt act of insolvency or had ceased to do business. If the filing of the bill herein fixed a lien on the corporate assets, then the complainants are entitled to the benefit thereof.

We think, however, no lien was fixed by the filing of the bill. There is a class of cases in which a bill filed to reach specific property does fix a lien without attachment.

This, however, is not one of them. Complainants are not judgment creditors. They do not seek to set aside a fraudulent conveyance, nor do they show any trust in the property sought to be reached, nor any lien in their favor. It is only in some such case, where the inherent jurisdiction of equity, or the jurisdiction extended by statutes, as Thompson's Shannon's Code, sections 6091-6097, is invoked, that a lien is fixed by the filing of the bill. *McKeldin* v. *Gouldy,* 91 Tenn., 677, 20 S. W., 231.

The complainants' demand is purely legal, and a court of equity is without jurisdiction to aid them to subject an equitable interest to satisfaction of their claim. *McKeldin* v. *Gouldy,* supra.

They may recover on their debt, and, if their bill shows legal grounds, may have an attachment on the property sought to be reached—all in the chancery court since the Acts of 1877, chapter 97. In such case, however, the chancery court is exercising the jurisdiction of a court of law, and the lien on the property pursued accrues from the levy of the attachment. *Allen* v. *Gilliland,* 74 Tenn. (6 Lea), 521; *McKeldin* v. *Gouldy,* supra.

So it follows that the complainants and the subcontractors are entitled to share ratably in the assets of the construction company. It is not denied that the subcontractors are entitled to judgment for any deficiency after the application of their share of the assets of the construction company to their claims against the sureties on the general contractor's bond.

The petition of the subcontractors filed herein prays among other things, that their bill be sustained as a general creditor's bill. In order to remove any question of the jurisdiction of the court over the entire amount of the funds in controversy, this should have been done and it is now so ordered.

This cause will be remanded and the court below will take into its custody the funds in the hands of Greene county or its road commissioners which may be due to the Mann Construction Company, and the court will also take into its custody any other assets of said corporation that may appear. Publication will be ordered directing creditors to file their claims and other appropriate proceedings had as in a general creditor's suit. The claims that have been herein asserted against the Mann Construction Company will be treated as claims proven and filed, unless upon cause shown the chancellor should be of opinion that the validity of any of them required further investigation.

The funds thus realized will be applied first to the payment of the laborers' claims and then distributed ratably among complainants, the subcontractors, and other creditors of the Mann Construction Company.

The efforts of all of the counsel have heretofore been exerted so exclusively in behalf of their own clients, for

services so far rendered, each counsel must look to his own client for compensation. The court costs so far accrued will be paid out of the funds coming into the hands of the court herein.