# CASES

## ARGUED AND DETERMINED

# SUPREME COURT OF TENNESSEE

## EASTERN DIVISION.

### KNOXVILLE, SEPTEMBER TERM, 1922.

MECHANICS' BANK & TRUST CO. *v.* KNOXVILLE, S. & E. RY. CO. *et al.*

(*Knoxville.* September Term, 1922.)

1. **UNITED STATES.** Assignment of claim against United States by railroad company held not within any exceptions of statute.

Assignment of claim against the United States government on account of the government's use of assignor's railroad *held* within prohibition of Rev. St. U. S., section 3477 (U. S. Comp. St., section 6383), that transfers and assignments of claims on the United States shall be void, unless made after allowance thereof and issuance of warrant. (*Post, pp.* 119-121.)

Cases cited and approved: Ball v. Halsell, 161 U. S., 72; National Bank of Commerce v. Downie, 218 U. S., 345; St. Paul & Duluth R. Co. v. United States, 112 U. S., 733; Nutt v. Knut, 200 U. S., 13; Calhoun v. Massie, 253 U. S., 170.

Cases cited and distinguished: United States v. Gillis, 95 U. S., 407; Spofford v. Kirk, 97 U. S., 484.

(113)

148 Tenn.—8

2. **UNITED STATES.** Statute prohibiting assignments of claims against United States inoperative. where transfer of claim was by operation of law.

Under Rev. St., U. S., section 3477 (U. S. Comp. St., section 6383), providing that transfers and assignments of claims on the United States shall be void, unless made after allowance and issuance of warrant, does not embrace cases where there has been a transfer of title by operation of law. (*Post, p.* 121.)

Cases cited and approved: Erwin v. United States, 97 U. S., 392; Goodman v. Niblack, 102 U. S., 556; Price v. Forrest, 173 U. S., 410; Houston v. Ormes, 252 U. S., 469; Seaboard Air Line Railway v. United States, 256 U. S., 655.

3. **UNITED STATES.** Assignor cannot complain if government recognizes and pays assigned claim.

Rev. St. U. S., section 3477 (U. S. Comp. St., section 6383), declaring that transfers and assignments of claims on the government shall be void, unless made after allowance and issuance of warrant, being for the benefit of the government. assignor cannot complain if the government recognizes an assignment and pays to the assignee. (*Post, pp.* 121, 122.)

Cases cited and approved: Bailey v. United States, 109 U. S., 432; Freedman's Savings & Trust Co. v. Shepherd, 127 U. S., 494; McGowan v. Parish, 237 U. S., 285.

4. **UNITED STATES.** Assignment of claim against United States creates legal obligation against general estate of assignor.

Where there has been no assertion of a lien on or interest in a claim against the United States, the assignment thereof may be looked to as creating a legal obligation against the general estate of the assignor. (*Post, p.* 122.)

Cases cited and approved: Wright v. Tebbitts, 91 U. S., 252; Nutt v. Knut, 200 U. S., 12.

5. **UNITED STATES.** Rules as to statute prohibiting assignment of claims against United States as affecting passing title to partnership stated.

Mechanics' Bank & Trust Co. v. Knoxville, S. & E. Ry. Co.

Rev. St. U. S., section 3477 (U. S. Comp. St. section 6383), prohibiting assignment of claims against the United States until allowance thereof and issuance of warrant, does not prevent passing of title to a partnership formed between the claimant and others before such claim arose. (*Post, pp.* 122, 123.)

Cases cited and approved: Hobbs v. McLean, 117 U. S., 567; Conde v. York, 168 U. S., 642.

6. **CORPORATIONS.** Assets become trust fund from date of assured insolvency.

The assets of an insolvent corporation became, from the date of its assured insolvency, a trust fund for equal distribution among its creditors, unless otherwise provided by law or fixed by contract. (*Post, pp.* 123, 124.

Cases cited and approved: Marr v. Bank; 44 Tenn., 471; Mosbey v. Williamson, 52 Tenn., 278; Comfort v. Patterson, 70 Tenn., 671; Comfort v. McTeer, 75 Tenn., 660; Tradesmen Pub. Co. v. Knoxville Car Wheel Co., 95 Tenn., 634; McClaren v. Roller Mill Co., 95 Tenn., 696; Smith v. Bradt Printing Co., 97 Tenn.. 351; Memphis Barrel etc., Co. v. Ward, 99 Tenn., 172; Voightman v. Railroad, 123 Tenn., 452; Willis v. Mann Const. Co., 145 Tenn., 318.

7. **CORPORATIONS.** Company's claim against United States charged with trust for benefit of general creditors.

Where the effect of a foreclosure bill was to put a permanent stop to the exercise of a railroad company's franchise and doing of business by the corporation, and its assets thereupon became impressed with a trust, its claim against the United States, arising out of the government's use of its road, was impressed with a trust for the benefit of all creditors. (*Post, pp.* 124, 125.)

8. **UNITED STATES.** Assignment of claim to take effect when collected was of no effect where assignor became insolvent before collection.

If an assignment of a claim against the United States government was not to operate until the claim had been collected, but before collection thereof assignor ceased to be a going concern and its

assets were impressed with a trust for its general creditors, thereafter being incapacitated to prefer any of its creditors, the assignment was of no effect. (*Post, p.* 125.)

9. **UNITED STATES.** Ratification of assignment of claim against United States by stockholders and directors after insolvency held futile.

Where the assignment by a railroad company of an unallowed claim against the United States was ineffective to pass title thereto to assignee, and thereafter the company became insolvent, an attempted ratification of the assignment of stockholders and directors of the company was futile. (*Post, pp.* 125, 126.)

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. CHAS. HAYS BROWN, Chancellor.

WRIGHT, WRIGHT & SAXTON and GREEN, WEBB & CONAN, for Mechanics' Bank & Trust Co.

W. BAXTER LEE, JAMES B. WRIGHT and HENRY HUDSON, for Knoxville, S. & E. Ry.

MR. JUSTICE GREEN delivered the opinion of the Court.

The main suit is one by the Mechanics' Bank & Trust Company, trustee, to foreclose a mortgage executed by the Knoxville, Sevierville & Eastern Railway Company to secure an issue of bonds. Prior to this suit this railroad, a short line of about thirty miles running from Knoxville

to Sevierville, was operated for a time by the United States government. A receiver for the properties of the railway company was appointed pending the litigation and he collected from the government on account of its use of the railroad the sum of $21,250.12.

The case comes up on a controversy as to the application of $20,000 of this money so collected by the receiver. It all was claimed in the lower court and in the court of civil appeals by the bondholders. They, however, have abandoned their claim in this court and the controversy here is between the general creditors of the railway company and the William J. Oliver Manufacturing Company, a Tennessee corporation, and the Chelsea Exchange Bank of New York, the last two parties claiming under an assignment executed by the railway company, before it went into the hands of a receiver, to the William J. Oliver Manufacturing Company.

The chancellor decreed that the general creditors were entitled to the fund. The court of civil appeals affirmed the chancellor in denying the right of the bondholders to the fund, but held that the assignment was good and the Oliver Manufacturing Company and the Chelsea Exchange Bank were entitled to take $20,000 thereunder.

Certain of the general creditors have brought the matter to this court by petition for *certiorari,* and we have been favored by able arguments and elaborate briefs.

The assignment is as follows:

"Whereas, the Knoxville, Sevierville & Eastern Railway Company, of Knoxville, Tennessee, has prepared and submitted for payment to the United States government a claim for moneys due it under certain acts passed by Congress and upon which it is expected payment, in the

amount of slightly over $52,874.10; and

"Whereas, the Knoxville, Sevierville & Eastern Railway Company is at this time indebted to the William J. Oliver Manufacturing Company for work performed and services rendered in the past an amount in excess of $20,-000; and

"Whereas, it is desired that the William J. Oliver Manufacturing Company receive an amount of not less than $20,000 from the moneys collected from the claim aforementioned: Now,

"Therefore, in order to make certain of the payment to the William J. Oliver Manufacturing Company the aforesaid amount the Knoxville, Sevierville & Eastern Railway Company through its officers, acting under authority extended by the board of directors, does hereby assign, sell, and transfer all its right, title, and interest in and to an amount of $20,000 from the amount of which money that may be collected upon the aforementioned claims, such funds to apply as a payment toward the liquidation of the indebtedness to the William J. Oliver Manufacturing Company by the said railway company.

"In witness whereof, the said Knoxville, Sevierville & Eastern Railway Company has caused this instrument to be executed by its president and its seal affixed by its secretary on this the 27th day of September, 1920. Knoxville, Sevierville & Eastern Railway Company, by W. J. Oliver, President. [Seal.] Walter McCoy, Secretary and Treasurer."

While this instrument appears to have been executed September 27, 1920, it is agreed that this is a mistake, and the true date was September 25, 1920. After procuring this assignment and on the same date, September 25, 1920,

the William J. Oliver Manufacturing Company reassigned all its right, title, and interest in said fund to the Chelsea Exchange Bank to secure an indebtedness of said Manufacturing Company to said bank.

The chancellor was of opinion that the assignment was within the prohibition of section 3477, United States Revised Statutes (U. S. Comp. St., section 6383), and therefore ineffectual. We think he was right. The federal statute is as follows:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, . . . shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer, and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same."

It was early held by the supreme court that an assignment of a claim against the United States did not pass the legal title thereto to the assignee, and discussing the Federal statutes the court said:

"So far are they from giving new potency to assignments

and transfers of rights in action, so far from changing the common-law rule that such rights are not assignable, the statute strikes down and denies any effect to powers of attorney, orders, transfers, and assignments which before were good in equity, and which a debtor was bound to regard when brought to his notice." *United States* v. *Gillis,* 95 U. S., 407, 24 L. Ed., 503.

Shortly thereafter the court held that such claims against the government were alike inalienable in law and equity. *Spofford* v. *Kirk,* 97 U. S., 484, 24 L. Ed., 1033. In this case the court said of section 3477:

"It would seem to be impossible to use language more comprehensive than this. It embraces alike legal and equitable assignments. It includes powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof. It strikes at every derivative interest, in whatever form acquired, and incapacitates every claimant upon the government from creating an interest in the claim in any other than himself."

*Spofford* v. *Kirk* was expressly approved in *Ball* v. *Halsell,* 161 U. S., 72, 16 Sup. Ct., 554, 40 L. Ed., 622, and in *National Bank of Commerce* v. *Downie,* 218 U. S., 345, 31 Sup. Ct., 89, 54 L. Ed., 1065, 20 Ann. Cas., 1116.

The rule of *Spofford* v. *Kirk,* has been applied by the supreme court also in *St. Paul & Duluth R. Co.* v. *United States,* 112 U. S., 733, 5 Sup. Ct., 366, 28 L. Ed., 861; *Nutt* v. *Knut,* 200 U. S., 13, 26 Sup. Ct., 216, 50 L. Ed., 348; *Calhoun* v. *Massie,* 253 U. S., 170, 40 Sup. Ct., 474, 64 L. Ed., 843, and other cases.

Upon these authorities we think it clear that no present interest, either legal or equitable, passed from the railway

company to the manufacturing company by the execution of the assignment quoted.

The supreme court has considered section 3477 many times. Some of these decisions contain language, upon which counsel have laid hold, which it is urged indicates a departure by that court from *Spofford* v. *Kirk*. We think this is a misconception on the part of counsel. The supreme court has established some exceptions to the rule of the statute as declared in *Spofford* v. *Kirk,* and these exceptional cases we have undertaken to group, not with meticulous nicety, but with sufficient precision for the purposes of this discussion.

The statute does not embrace cases where there has been a transfer of title by operation of law. *Erwin* v. *United States,* 97 U. S., 392, 24 L. Ed., 1065, where the title passed to the claimant's assignee in bankruptcy. *Goodman* v. *Niblack,* 102 U. S., 556, 26 L. Ed., 229, where the claimant assigned all his property for the benefit of creditors. *Price* v. *Forrest,* 173 U. S., 410, 19 Sup. Ct., 434, 43 L. Ed., 749, *Houston* v. *Ormes,* 252 U. S., 469, 40 Sup. Ct., 369, 64 L. Ed., 667, where a receiver was appointed by a court of competent jurisdiction to collect the claim. *Seaboard Air Line Railway* v. *United States,* 256 U. S., 655, 41 Sup. Ct., 611, 65 L. Ed., 1149, where there was a transfer of title by merger or consolidation of two railroad corporations.

Inasmuch as the statute was passed for the benefit of the government, the assignor cannot complain if the government recognizes an assignment and pays to the assignee. *Bailey* v. *United States,* 109 U. S., 432, 2 Sup. Ct., 272, 27 L. Ed., 988; *Freedman's Savings & Trust Co.* v. *Shepherd,* 127 U. S., 494, 8 Sup. Ct., 1250, 32 L. Ed., 163;

*McGowan* v. *Parish,* 237 U. S., 285, 35 Sup. Ct., 543, 59 L. Ed., 955.

Where there is no assertion of a lien upon or interest in the claim, the assignment may be looked to as creating a legal obligation against the general estate of the assignor. *Wright* v. *Tebbitts,* 91 U. S., 252, 23 L. Ed., 320; *Nutt* v. *Knut,* 200 U. S., 12, 26 Sup. Ct., 216, 50 L. Ed., 348.

The statute has also been held not to prevent the passing of title to a partnership formed between the claimant and others before any claim against the government arose. *Hobbs* v. *McLean,* 117 U. S., 567, 6 Sup. Ct., 870, 29 L. Ed., 940.

In the case of *Conde* v. *York,* 168 U. S., 642, 18 Sup. Ct., 234, 42 L. Ed., 611, the supreme court held that no Federal question was presented.

It is obvious from the foregoing that the case before us does not fall within any of the exceptions so far made to the operation of section 3477, and, notwithstanding the assignment to the manufacturing company, the railway company still remained the owner of this claim against the government pending its allowance.

The foreclosure bill herein was filed January 21, 1921, some four months after the assignment. It appears from the record that a receiver was appointed for the railway company and took over all the properties of the road, and thereafter held said properties and operated the railroad until it was sold several months later. It further appears from a petition of the receiver filed March 18, 1921, that the railway company's claim against the government had not been allowed, and he asked permission from the court to incur certain expenses necessary to the prosecution of such claim. This authority was given him, he was

authorized to collect the claim, and thereafter he obtained favorable action from the government authorities and received payments on this account as follows: April 5, 1921, $6,459.13; July 14, 1921, $12,790.99; December 10, 1921, $2,000—total, $21,250.12. Thus it appears that the claim of the railroad company against the government was not allowed, and no part thereof was paid until some months after the properties of the railway company had been placed in the hands of a receiver.

It is the settled law of this State that the assets of an insolvent corporation become from the date of its assured insolvency a trust fund for equal distribution among its creditors, unless otherwise provided by law or fixed by valid contract. This trust attaches whenever there is a positive act of insolvency, such as the filing of a bill to administer the assets of the insolvent corporation, or the making of a general assignment or a permanent cessation to do business or to exercise its franchises. *Marr* v. *Bank,* 4 Cold., 471; *Mosbey* v. *Williamson,* 5 Heisk., 278; *Comfort* v. *Patterson,* 2 Lea, 671; *Comfort* v. *McTeer,* 7 Lea, 660; *Tradesmen Pub. Co.* v. *Knoxville Car Wheel Co.,* 95 Tenn., 634, 32 S. W., 1097, 31 L. R. A., 593, 49 Am. St. Rep., 943; *McClaren* v. *Roller Mill Co.,* 95 Tenn., 696, 35 S. W., 88; *Smith* v. *Bradt Printing Co.,* 97 Tenn., 351, 37 S. W., 10; *Memphis Barrel, etc., Co.* v. *Ward,* 99 Tenn., 172, 42 S. W., 13, 63 Am. St. Rep., 825; *Voightman* v. *Railroad,* 123 Tenn., 452, 131 S. W., 982, Ann. Cas., 1912C, 211; *Willis* v. *Mann Const. Co.,* 145 Tenn., 318, 236 S. W., 282.

There is no question as to the actual insolvency of this railroad company. The property brought $50,000. When it was sold it had $500,000 of bonded indebtedness, and

in addition there seems to have been an unsecured indebtedness, amounting to many thousands of dollars.

It is clear that when the receiver, under authority of the court took charge of this property and began to operate it, the railway company ceased to be a going concern, ceased to exercise its franchises, and permanently ceased to do business. Thereafter its assets, including the claim against the government, were a trust fund for the benefit of all its creditors, except in so far as otherwise provided by valid contract, and we have seen there was no valid assignment of this government claim.

It is not material that the foreclosure bill was not filed as a bill to administer the assets of the corporation or as a general creditor's bill. The effect of the bill was to put a permanent stop to the exercise of its franchises and the doing of business by this corporation, and thereupon the assets of the corporation became impressed with the trust. *Memphis Barrel, etc., Co.* v. *Ward, supra; Voightman* v. *Railroad Co., supra; Willis* v. *Mann Const. Co., supra.* The case before us is indistinguishable from *National Bank of Commerce* v. *Downey, supra.* In that case a firm holding unallowed claims against the United States undertook to assign said claims to certain banks as collateral security. Before the allowance of the claims this firm went into bankruptcy. It was held that the trustee in bankruptcy of the firm was entitled to collect the claims as against the banks. The court said:

"The result is that when Gamwell & Wheeler were adjudged bankrupt, they were still in law the owners of these claims on the United States, and all interest therein passed under the Bankruptcy Act to their general creditors, to be disposed of as directed by the Bankruptcy Act,

just as if there had been no attempt to transfer them to the banks."

So here, the railway company was still the owner of this claim against the United States when it ceased to be a going concern, and under our law all interest in the claim became charged with the trust for the benefit of the general creditors of the railway company.

The court of civil appeals expressed the opinion that the railway company by its assignment did not attempt to transfer the claim against the government, but to transfer $20,000 of any money which might be collected upon said claim. In other words, that this assignment was not to operate until the claim had been collected. If this be a correct construction of the assignment, of course, it can have no effect, since before it became operative, the railway company had ceased to be a going concern, and was incapacitated by the law to prefer any of its creditors.

For the same reason the attempted ratification of this assignment made by stockholders and directors of the railway company on November 29 and December 16, 1921, was futile. The railroad property had at that time been sold and the corporation had long ceased to exercise its functions.

Inasmuch as the William J. Oliver Manufacturing Company, took nothing under this assignment from the railway company, the assignment of the Oliver Manufacturing Company, to the Chelsea Exchange Bank carried nothing. While the foreclosure bill was not filed as a general creditors' bill, nor sustained as such, nevertheless it seems to have been so treated, and a number of creditors have filed intervening petitions in this cause. Under the practice followed in *Willis* v. *Mann Const. Co.,* supra, and other

unreported cases, it is now ordered that this bill be sustained as a general creditors' bill, and the cause will be remanded for proper proceedings to make this order effective.

The costs of the court of civil appeals and this court will be paid by the appellants. The decree of the court of civil appeals will be modified as indicated, and the cause remanded. Costs below will be taxed by the chancellor.