SWEETWATER BANK & TRUST COMPANY, et al., v. JOE J. HOWARD, et ux.

Eastern Section. June 27, 1931.

Petition for Certiorari denied by Supreme Court, October 10, 1931.

Peace & Sloan, of Madisonville, for appellant.
Burns & Michael, of Athens, for appellee.

PORTRUM, J. The bill in this cause purports to be a general creditors' bill, filed by the Sweetwater Bank & Trust Company and the First National Bank of Sweetwater, against Joe J. Howard and his wife, Sarah Howard. No other person was made a party as a creditor. The bill alleges that the Sweetwater Bank & Trust Company was a creditor of the defendants by note in the total sum of $2242.85; that the First National Bank of Sweetwater holds a note signed by Joe J. Howard for the sum of $1,066.67, and this note provides for ten per cent attorneys' fees; that the defendant, Joe J. Howard, is also indebted to one, S. L. Hunt in the principal sum of approximately $3,500, and that said amount is in judgment in the chancery court of Monroe County, Tennessee; and that the defendants are also indebted to other banks, within the knowledge of complainants, in a sum in excess of $1,000; and that the defendants are also indebted to divers and various persons unknown to your complainant and in amount unknown to your complainant, and some of said creditors have brought suit and others are threatening to bring suits against these defendants, especially against the defendant Joe J. Howard, and that a great part of the assets of the defendants would likely be consumed by costs and expenses incidental to the multiplicity of suits. It is to be noted that none of these creditors are named notwithstanding the bill alleges some of them are known.

The bill further alleges, that:

"Complainant further avers that defendants are in an insolvent condition, unable to meet their bills as they become due in the ordinary course of business, and that the said defendant, Joe J. Howard, has repeatedly admitted his said inability to meet his debts especially the debt herein sued on. Complainants are informed and believe, and on that information and behalf charge that the liabilities of said defendants will far exceed their assets."

"That, as hereinbefore stated, one S. L. Hunt has a judgment in the chancery court of Monroe County, Tennessee, on the docket of said court, in the sum of approximately $3500, and that your complainants are informed and believe that said S. L. Hunt is threatening to levy an execution upon the farm of the defendants, which farm is hereinafter described, and that he will levy such an execution if not restrained by injunction of this honorable court, and that if said farm is sold under execution it will not bring anything like its real worth and the other creditors of the said defendant will suffer thereby.

"That the principal asset of the defendants is a farm comprising about 265 acres, and more particularly described as follows: . . . and a small amount of farming tools and live stock now on said farm; also one Ford sedan automobile. So far as complainants can discover defendants own no other personal property, nor property of any kind.

"Complainants aver that unless given relief by this honorable court that all the assets of the defendants will be sold at a sacrifice and creditors will be deprived of any means of collecting their debts, and that if one creditor should be allowed a preference or full satisfaction of his claim, leaving nothing upon which other creditors can rely for satisfaction of their claims, that to prevent such an inequitable situation complainants are advised that they are entitled to come into this Court and ask for an injunction to issue upon this and other grounds herein alleged, restraining all creditors from prosecuting other suits or seeking to have any judgments satisfied, requiring them to come into this cause and file their claims and demands herein, to the end that all creditors may receive an equitable distribution from the assets of said defendants. Complainants will, in the prayer of this bill, pray for such relief.

"That complainants are informed and believe that the defendant, Joe J. Howard, tried in vain to place a loan or mortgage upon his said farm and that he is now attempting to procure a sale for said farm, to the endangerment of complainants' debt, and that the defendants are about to fraudulently dispose of their property, real and personal."

The prayer of the bill was that it be sustained as a general creditors' bill, and that all creditors be required to come into court and establish their claims therein. That judgment be rendered upon the complainants' claims in their favor. That an attachment issue and be served upon the defendants' entire estate. That all creditors be enjoined from prosecuting their suits or claims in any other cause except this one. That a receiver be appointed to take possession of all the property of the defendants of every sort and description, be the same real, personal or mixed. That the receiver be empowered and directed to convert all of said property into money as well as is practicable. That a decree be had for a pro rata distribution of the defendants' assets.

The defendant, Joe J. Howard, did not demur to the attachment, but was willing to wait the contest upon the merits. He filed a plea in abatement to the attachment. He and his wife filed answers denying each of the material allegations of the bill; and he filed notice, and a motion to dissolve the injunction and attachment, and dismiss the bill, to be acted upon at a hearing in chambers before the chancellor. The defendants filed notice of an applica-

tion to the chancellor to sustain the bill as a general creditors' bill, and appoint a receiver. These motions were heard by the chancellor, who was not satisfied that the defendants were insolvent. He deferred final action until the master could report upon this question, which was referred to him. However, the extraordinary processes were left in force until the hearing. Proof was taken and the master reported that the defendants were solvent; the motions were again called up for argument, and the complainants' exceptions to the master's report. One of the exceptions was that the master failed to take into consideration the homestead and dower rights of the wife; the chancellor was of the opinion that if an exemption was deducted from the value of the farm then the defendants were insolvent. He was also of the opinion that the case was properly filed as a general creditors' bill, and he sustained it as such and the attachment, and he made the injunction perpetual. He then ordered the appointment of a receiver to take charge of all the property of the defendants and dispose of it in a manner to be hereafter referred to. In his opinion he says:

"In the case at bar and now under consideration judgment had been rendered against the defendant Howard at a former term of this Court. A lien therefore existed under statute on this land, no execution was issued thereon and its issuance was enjoined by the bill in this cause.

"The Court is therefore of the opinion that, there being a fixed lien upon defendants' land which affects the legal title to the land, that whatever remains therein to defendant, Howard, was subject to said lien, therefore not subject to execution, but being an equitable interest which might be reached in a proceeding of this character, as if any other character of lien such as a mortgage or vendor's lien; that such a lien is an obstacle or impediment which is not the subject of enforcement by execution and is not levyable at law.

"It occurs to the Court that the doctrine of marshalling the assets would also be applicable to cases of this kind."

We cannot agree with the chancellor. The remedy at law of the three creditors is full, adequate and unimpeded. In levying the Hunt execution, the Court will not presume the sheriff will make an excessive levy; there are about 340 acres of valuable land, and it is shown to be worth at a sheriff's sale at least $9,000 and also personal property of a greater value than $1000 is subject to be applied on one of the complainants' debt. There will be sufficient land left to satisfy the complainants' judgment, upon which the sheriff can levy an execution. This is one of the few farms that is not covered by a mortgage or trust deed. This farmer was em-

barrassed by endorsing another man's note. If the sheriff levies on too much of the land and the purchaser only bids the debt, then the complainants can protect their interests by redeeming the land, or bidding themselves at the sale.

The chancellor was of the opinion that the first levy exhausted the right, but the statutes in reference to executions provide the methods whereby the junior creditors can levy upon the same land and obtain satisfaction in the designated manner. It is true that the first levy fastens a lien upon the land, but this lien is not of the same character as a mortgage or vendor's lien, for in this case it is not necessary to go into the chancery court in order to be able to run the second levy upon the land. The debt in this case was shown to be $9,000 approximately, and one of plaintiffs' witnesses says that the land, if sold for cash, would bring $9,000. It is not unreasonable to say from the facts as developed in this case that if the sheriff sold this land under execution, it would in the end bring an adequate price and one sufficient to pay all indebtedness of the defendants.

Now, complainants are trying to sustain this bill as a general creditors' bill without the production of a nulla bona return on an execution. They cite authorities to show that such return is not in all cases absolutely essential. But two things must appear before this return can be dispensed with; it must appear that the judgment debtor is really insolvent and that he has no property subject to execution at law. Cocke County National Bank v. Robinson, 143 Tenn., 353.

The Supreme Court has determined the purpose and object of a creditors' bill in the case of Hutchins v. Wilson, 141 Tenn., 301, as follows:

" 'A creditors' bill has been defined to be a bill by which a creditor seeks to satisfy his debt out of some equitable estate of the debtor which is not liable to levy and sale under execution at law, or out of some property which has been put beyond the reach of the ordinary process.'

"And, annexed to the above text, we find the following definitions, which are supported by authorities:

" 'In their most comprehensive sense they are bills in equity by creditors to enforce payment of debts out of the property of debtors, under circumstances which impede or render impossible collection of the debt by the ordinary processes of execution.'

" ' 'The jurisdiction on a creditors' bill is only exercised when the remedy to parties at law is ineffectual to reach the debtor's property, or when the enforcement of the legal remedy is ob-

structed by some encumbrance or by transfer which has been made to defeat the creditors' rights.'"

The complainants do not qualify under any of these definitions, but if the defendants were fraudulently disposing of the property the complainants could maintain it in aid of a suit at law. Shannon's Code, Sections 6091 to 6097, inclusive.

Again, quoting from the bill:

"Joe J. Howard tried in vain to place a loan or mortgage upon the said farm, that he is now attempting to procure a sale of said farm, to the endangerment of complainants' debt, and that the defendants are about fraudulently to dispose of their property, real and personal."

This allegation, without more, only states a conclusion of the pleadings, but the defendants were willing to waive this and in their pleadings deny the truth of the allegations that they were fraudulently about to dispose of the property.

This is the proof advanced by the Bank, through the mouth of its officer to sustain this allegation:

"Q. Did you ever talk to Mr. Howard about selling this farm? A. Yes, I suggested it to him, as I remember, that it would be the best thing probably for him to sell the whole place and apply this to his indebtedness."

The chancellor erroneously sustained this attachment, but we assume he sustained it because he sustained the bill as a general creditors' bill and to preserve the property.

The fact that there was a prior judgment lien outstanding against the real estate will not entitle the complainants to come into a court of equity in aid of their contemplated suit at law (there was no suit at law contemplated), or seek the aid of the chancery court in lieu of a suit at law. These statutes, on the right of a creditor to intervene in equity, have been fully construed in McKelvin v. Gouldy, 91 Tenn., 617, and Bryan v. Zarecor, 112 Tenn., 503. In the last named case the Court said:

"(3) The original and amended bills show on their face that the proper remedy for Bryan to have pursued was by execution and garnishment at law, and no reason is alleged or fact shown why this course was not pursued, and why it was not the proper remedy. The bills show on their face that the property existed, and could be reached by execution at law, and the legal remedy was not exhausted.

"We are constrained to hold that these several contentions are sound, and that counsel has mistaken his remedy in his efforts to enforce the collection of this debt.

"In McKelvin v. Gouldy, 91 Tenn., 678, 20 S. W., 231, this Court said as follows:

" 'The original jurisdiction of the courts of equity to aid a creditor holding a legal demand was limited to those cases in which there was some element of fraud effecting the remedy at law as to assets subject to execution but for the interposition of fraud, and to those cases where there was some element of trust peculiarly entitling the creditor to subject a particular asset to the satisfaction of his demand; but, where neither trust nor fraud appeared, such courts had no jurisdiction to aid such creditor, even though he had exhausted his remedy at law.' "

If a court cannot aid a creditor even though he had exhausted his remedies at law, how then can the court aid these creditors who have not exhausted their remedies at law, and the remedies appear adequate? In this case the complainant creditors cannot rightfully procure a nulla bona return on an execution, and in such case, as heretofore stated, this Court cannot dispense with such a return.

In the Bryan case the creditor was seeking to fasten upon, by the aid of equity, a chose of action, and the Court held that the creditor had a remedy at law where he could garnishee the demand of the debtor, which was due from a third party. All that it is necessary for the creditors to do in this case is to obtain judgment, and have execution issued and levied upon the land.

After reviewing many cases, the Court said, in the Bryan case:

"(3) Under these provisions of the Code, a bill may not be maintained to reach property subject to execution at law without an averment of some acknowledged principle of equity jurisdiction, such as the assertion of a lien, fraud, discovery, trust, or an equitable interest in the property."

This bill meets none of these requirements, and it should not have been sustained, even as a general creditors' bill or as a bill seeking the ancillary jurisdiction of the chancery court, under the above quoted sections of the Code.

However, the bill should not have been dismissed in toto; the chancellor properly rendered judgment upon the note that was due, and there is no question made upon the judgment on the note which was not at the time due. For,

"They may recover on their debt in the chancery court, Acts of 1877, Chapter 97. In such case, however, the chancery court is exercising the jurisdiction of a court at law . . ."

Willis v. Mann Construction Company, 145 Tenn., 332.

The decree in this case is irregular, if not void; it confers upon the receiver judicial powers in excess of those possessed by the chancellor. He was ordered to take into his possession all of the property, both real and personal, of the defendants, without a

description of it, and without reference to the defendants' exemptions; and to offer all the property for sale; the personal property was to be sold for cash in hand at either public or private sale. He was authorized to sell all the real estate belonging to the defendants, either at public or private sale, but subject to the confirmation of the court. He was directed to advertise said sale "as may be necessary and to report the best bid obtained, at either public sale or private negotiations, as soon as possible." He was authorized to set aside the exemptions in the personal property and was empowered to appoint commissioners, "or take such other steps as may be necessary under the laws governing to preserve and protect the homestead rights of defendants. . . . The sale of said real estate will be made subject to said homestead rights or the marketable value of said homestead if same be not set aside in real estate."

To the extent only of the rendition of judgment upon the note against the defendants will this case be affirmed. In all other respects the case is reversed and dismissed. The costs necessarily incurred in reducing these debts to judgment will be paid by the defendants, and the balance of costs, including the receiver's compensation, will be paid by the complainants. The clerk failed to attach to the transcript a bill of costs, and it will be necessary to remand the case for the taxation of costs, and to fix the receiver's compensation. The defendants are entitled to an order of execution.

Snodgrass and Thompson, JJ., concur.