Whitledge v. Wait's Heir.

MAY 26, 1804.

# Thomas Whitledge v. David Wait's Heir.

*Upon a writ of error to reverse a decree of the Circuit Court of Bourbon county.*

The *bona fide* occupant of land, believing it to be his own, is entitled to be paid the enhanced value of the land by reason of his improvements made after, as well as before, the commencement of the suit by which he was evicted, and he is chargeable with rents and profits from the time he had notice of the adverse claim.

This suit having been commenced previous to the passage of the act entitled "An act concerning occupying claimants of lands,"

can not be affected by any of the provisions thereof, but must be decided by the principles and rules of equity applicable to the case. It is conceived that the inferior court have erred in the application of the rules and principles of equity, and departed from the practice of courts of chancery in decreeing that so much of the value of improvements as is charged since the commencement of the suit, ought not to be allowed. The principle that "no person ought to profit by another's loss," is peculiarly applicable to this case, where the possessor of a subject, which he *bona fide* considers to be his own, bestows his money and labor on reparations and ameliorations; the proprietor claims the subject and prevails; he profits by the meliorations, and the money and labor bestowed thereon are converted to his use. Equity requires that the *bona fide* possessor should be reimbursed. And it is conceived that all who have obtained grants for land from the commonwealth, and those claiming under them, are to be considered as *bona fide* possessors. Lord Kaimes, in his *Principles of Equity*, page 106, states that "the titles of landed property being intricate and often uncertain, instances are frequent, where a man, in possession of land, the property of another, is led by unavoidable error to consider it as belonging to himself; his money is bestowed without hesitation on repairing and meliorating the subject. Equity will not permit the owner to profit by such mistake, and in effect to pocket the money of the innocent possessor; he will be compelled by a court of equity to make up the loss, as far as he is richer." If this doctrine be correct in Europe, where, from the early and long settlement of the country, the rules of decision being well established and fixed by their courts, and a variety of other reasons, the titles of landed property can, with much more certainty, be ascertained than in this country, which was lately a wilderness, and where the law, under which titles to land are derived, was newly made, the decisions of the courts, on cases arising thereon, unknown, and of course uncertain, no doubt can be entertained of its propriety and application to land cases here. Even was the doctrine in Europe different from what it is stated to be, it might well be doubted whether from difference in situation and circumstance, a different rule should not prevail here. In England, where property is well ascertained by the decisions of their courts, if a man enter into articles for the purchase of lands, gets possession, and under expectation of having the articles carried into effect, improves the land, even if the articles were obtained by him unfairly, to such a

degree, as that a court of equity would not decree a specific performance of them; yet the possessor was allowed for all valuable improvements and to account for the rents. 1 Vern. 487. Talbot's Cases in Equity 236. 3 Eq. Ca. Abrid. 681. The practice adopted in the late supreme court for the district of Kentucky, and recognized and approved by the court of appeals in Virginia, was to appoint commissioners to ascertain the rents and profits from the time notice was given of the adverse claim, and to allow for *all* lasting and valuable improvements. · *Consilla* against *Briscoe*, *Swearingen* against *Briscoe*. From these authorities there can be little hesitation in declaring that a *bona fide* possessor is entitled to an allowance for all necessary, lasting, and valuable improvements made on the premises to the time of eviction.

Cases may arise which may be exceptions to this general rule, without impeaching it, as where unnecessary, expensive, useless, fanciful, or ornamental improvements should be made or done with a design to render it out of the power of the proprietor to pay for them, and, therefore, to abandon his claim to the land. Such instances will be rare, and few men found who have so much money as to expend it in this way. Therefore, it is considered by the court, that the said decree of the Bourbon circuit court, so far as it is variant from this opinion, be reversed and set aside. And this court proceeding to make such decree as the said circuit court should have pronounced, it is decreed and ordered that the defendant in the court below do, by a good and sufficient deed, at the costs of the complainant, convey to him in fee simple all his, the defendant's, right, title, and interest in and to the lands decreed by the said circuit court to the complainant, with warranty against him, the defendant, and all claiming under him, and on or before the 25th day of December next, yield and deliver possession of the said land to the complainant. And it is further decreed and ordered that the complainant pay or tender to the defendant on or before the day aforesaid, the sum of £269 1 6, deducting therefrom such sum as may be found due for rents since the 3d day of March, 1802, up to the said 25th day of December next; also, such further sum as may be found due for all unnecessary waste and destruction of timber, soil, or otherwise, suffered, done, or permitted on the said premises by the said defendant, or those claiming under him during the last mentioned period, to be ascertained by commissioners, who the said court are directed to appoint for the pur-

poses aforesaid. And also such further sum as the costs of suit will amount to, which were decreed to the complainant by the said court.

And it is further decreed and ordered, that the plaintiff recover of the defendant the costs of prosecuting this writ of error, which is ordered to be certified to the said circuit court.