McClaren v. Roller Mill Co.

(*Nashville.* December 21, 1896.)

CORPORATIONS. *Not insolvent, when.*

A milling corporation, the value of whose properties have been reduced below the amount of its indebtedness by an accidental destruction of its plant by fire, does not, for a period of four months thereafter, become insolvent in such sense that its assets are a fixed trust fund for pro rata distribution among its creditors, and incapable of being diverted or applied to any particular debt, to the exclusion of others, by the act either of the company or of a creditor, when the officers and directors continued to hold meetings for the discussion of the company's affairs, which were involved in litigation, and to collect and disburse funds, and to transact such other business as the situation afforded.

Cases cited and approved: Comfort v. McTeer, 7 Lea, 652; Bank v. Lumber & Mfg. Co., 91 Tenn., 12; Tradesman Pub. Co. v. Car Wheel Co., *ante*, p. 634; 150 U. S., 371; 11 U. S. C. C. A., 320.

FROM SUMNER.

Appeal from Chancery Court of Sumner County. J. S. GRIBBLE, Ch.

WILSON & PARDUE for Complainants.

DISMUKES & SEAY, J. J. TURNER, and B. D. BELL for Creditors.

McAlister, J.   This bill was filed by certain stockholders and directors of the Union Roller Mills & Elevator Company for the purpose of winding up its affairs as an insolvent corporation.   Two days prior to the filing of this bill—to wit, on February 15, 1894—certain creditors of the corporation had obtained judgments against it before a Justice of the Peace, and impounded the proceeds of certain fire insurance policies, which were due and payable on account of the destruction by fire of the mill property.   The bill was filed for the purpose of enjoining those judgments, and having the entire assets distributed ratably among the general creditors of the corporation.   The contention of complainants is, that the Union Roller Mill & Elevator Company, at the time the garnishments were served by the defendant creditors, was an insolvent corporation, and that there had been such overt acts of insolvency as to convert the assets of the corporation into a trust fund for the benefit of all the creditors.   On the other hand, the defendant creditors insist that, at the time their judgments were obtained and the insurance fund impounded, the said corporation was still a going concern, and that they were therefore entitled to pursue all the ordinary legal and equitable remedies for the enforcement of their claims.   They therefore insist upon the priority of their liens as against the general creditors of the corporation.   The Chancellor, upon final hearing, decreed that the defendant creditors, by virtue

of their garnishments, acquired priority over the other creditors of the corporation, and ordered the payment of their judgments in full out of the funds due from the Phœnix Insurance Company. Complainants appealed. The Court of Chancery Appeals affirmed the decree of the Chancellor, and the case is before this Court upon the appeal of Charles Baker, executor of Mrs. Rhoda Baker, one of the general creditors.

The only question we are called upon to decide, as conceded by appellant's counsel at the bar, is, whether, upon the facts found by the Court of Chancery Appeals, the Union Mill & Elevator Company was, at the date of the garnishment judgments, a going concern. The general principle is well settled that the property of a private corporation, is not charged by law with any direct trust or specific lien in favor of general creditors, and such a corporation, so long as it is in the active exercise of its functions, may exercise as full dominion and control over its property as an individual. So a creditor, while the corporation is a going concern, although actually insolvent, is entitled to pursue the ordinary legal and equitable remedies for the enforcement of his claims. But when a corporation is dissolved, or determines to discontinue the prosecution of its business, or makes a general assignment, or commits any other overt act indicative of positive and assured insolvency, its property is thereafter affected by an equitable lien

or trust for the benefit of all of its creditors, and individual creditors may be restrained by injunctions against the appropriation of corporate assets to the payment of their claims. *Sutton Mfg. Co.* v. *Hutchinson*, 11 U. S. C. C. A. Rep., 320; *Hollis* v. *Iron*, 150 U. S., 371.

.The Court of Chancery Appeals, through Judge Neil, found the facts as follows, to wit: "On October 15, 1893, the mill and its contents were burned. After this, the corporation seems to have transacted no business, except to collect in such of its assets as it could, and to pay debts from time to time. Meetings of the board of directors were held from time to time, but the nature of the business transacted at these meetings does not clearly appear, except that, at one of these meetings, the action of the treasurer in paying a debt to defendant, McLaren, was ratified, and there seems also to have been a report, at one of their meetings, upon the condition of the company. From this report, some of the directors thought the company was insolvent, but others did not think so, and no steps were taken to wind it up until a suit was brought against the corporation by some persons who had deposited wheat in the mill, and was decided in their favor. From the testimony of Mr. McGavock, who had been secretary and general manager at the time the wheat was deposited, the managing officers of the corporation became satisfied that the corporation was liable for the wheat debts, and, if so, that it would

not pay out. Thereupon, this bill was filed February 17, 1893, to wind up the affairs of the company, as an insolvent concern. At the time the garnishments were run," continues the Court, "the corporation was transacting its business in the ordinary way, so far as it was able, in view of the fact that the mill had burned down. It was doing all that was left to do under such circumstances. It was endeavoring to collect in what was owing to it —the insurance policies, principally—and was paying debts from time to time, when demanded, but did not pay in every instance; was holding corporate meetings, and, in these meetings, considering its affairs. So far as we are able to see from the proof, this corporation was, at the time, transacting what business was left it to do under the circumstances, the mill having been burned, as every other business concern would have done in the same situation. It appears from the proof in this cause that, at the time referred to, the corporation was, in fact, insolvent, but we do not think there was such an overt act of insolvency as would, within the authorities, constitute its assets a trust fund for the benefit of its creditors in such a way as to prevent any creditor from acquiring a priority by proper and diligent proceedings." Citing *Comfort* v. *Mc-Teer*, 7 Lea, 652–660. Also, *Bank* v. *Lumber & Manufacturing Co.*, 7 Pick., 12, in which it was said, viz.: "A corporation is not insolvent in such sense that its assets become a fixed trust fund in

the hands of its officers for *pro rata* distribution among its creditors, so long as it continues to be a going concern, conducting its business in the ordinary way, although its debts may greatly exceed its assets." See, also, *Tradesmen Pub. Co.* v. *Car Wheel Co., ante*, p. 634.

This Court is, of course, bound by the finding of the Court of Chancery Appeals in respect of the facts, and we are entirely satisfied with the conclusions of law drawn from the facts so ascertained.

Let the decree be affirmed.