STATE OF TENNESSEE ex rel. S. S. McCONNELL, Superintendent of Banks, v. PEOPLES BANK & TRUST COMPANY.

IN RE FOURTH and FIRST NATIONAL BANK, Appellant, v. H. L. GRIGSBY, Receiver of Peoples Bank & Trust Company, Appellee.

Middle Section. June 11, 1930.

.P. D. Maddin, John K. Maddin and Lowe Watkins, all of Nashville, for Fourth & First Nat'l. Bank, Petitioner.

George S. Buckner, of Smithville, for Grigsby, Receiver.

CROWNOVER, J. This contest arose over a petition filed by the Fourth & First National Bank, of Nashville, to recover the proceeds of a $5,000 judgment, less attorneys' fees, recovered by the State Superintendent of Banks as receiver for the Peoples Bank & Trust Company from the United States Fidelity & Guaranty Company on a fidelity bond against loss by fraud or dishonesty of the employees of said Peoples Bank, which judgment had been transferred by the Peoples Bank to said Fourth & First National Bank as collateral to secure a loan made by said Fourth & First National Bank to said Peoples Bank & Trust Company, before the latter Bank was adjudicated insolvent.

The Chancellor held that the assignment of said judgment by the Peoples Bank & Trust Company to the Fourth & First National Bank was void, because it had not been consummated by giving notice to the judgment debtor, the United States Fidelity & Guaranty Company, before the insolvency proceeding was instituted by

the Superintendent of Banks to wind up the Peoples Bank & Trust Company as an insolvent institution under the statute, Acts of 1913, chapter 20, and he dismissed the petition.

The Fourth & First National Bank has appealed in error to this court and has assigned seven errors, which, when summarized, raise two propositions, that the Chancellor erred in dismissing the petition:

(1) Because the assignment of the judgment was valid as between the parties without giving notice to the judgment debtor.

(2) Because the insolvency proceedings and the appointment of a receiver to wind up the Bank as an insolvent corporation, did not have the effect of impounding the judgment attempted to be assigned so as to give the general creditors priority over the assignee.

The facts of the case necessary to be stated, are these: That the Fourth & First National Bank, of Nashville, had lent considerable money to the Peoples Bank & Trust Company, of Smithville, secured by notes pledged as collateral, and on April 21, 1926, the Peoples Bank was indebted to that Bank in the sum of $78,310.

On May 10, 1926, Thomas B. Dozier, cashier of the Peoples Bank, called on the vice-president of the Fourth & First National Bank and asked for an additional loan of $10,000, which amount was loaned and the cashier executed the Bank's note for that amount, bearing date of May 10, 1926, and deposited several of the Bank's notes as collateral. At which time the vice-president of the Fourth & First National Bank asked if the Peoples Bank would assign as collateral said judgment for $5,000 recently obtained in the Chancery Court at Smithville by the Peoples Bank against the United States Fidelity & Guaranty Company, in addition to the customers' notes pledged as collateral. The cashier said that he thought his Bank would assign said judgment. Thereupon, an attorney was employed to draft the assignment, which was carried by the cashier back to Smithville and was delivered to the Bank's directors, who passed a resolution authorizing the president and assistant-cashier to execute said assignment, which was done on May 24, 1926. This assignment was delivered to the Fourth & First National Bank some time before June 1, 1926.

The judgment or decree attempted to be assigned was obtained in the Chancery Court of Smithville in January, 1926, on a fidelity bond for the default of its cashier, and was then pending on appeal in the Court of Appeals where it was affirmed, but was later transferred to the Supreme Court on petition for certiorari, and on March 3, 1928, it was modified by that court to the extent of

disallowing a penalty, as set out in a written opinion under the style of Peoples Bank & Trust Co. v. United States Fidelity & Guaranty Co., 156 Tenn., 517, 3 S. W. (2d), 163.

On June 1, 1926, the Peoples Bank & Trust Company failed to open its doors for lack of funds to meet its obligations, and the directors passed a resolution authorizing the State Superintendent of Banks to take charge of the Bank and to file a petition to liquidate the same. The Superintendent of Banks took charge of the assets of said Bank, prepared an inventory of all the assets and liabilities, and requested the Fourth & First National Bank to furnish a list of collateral owned by the Peoples Bank. The list of collateral furnished by the Fourth & First National Bank, by oversight, did not include the assignment of this judgment.

On June 3, 1926, the Chancery Court, on petition of the Superintendent of Banks, appointed S. S. McConnell receiver, and on June 5th, McConnell filed a bill against the Bank and others for the purpose of winding up said Bank as an insolvent institution.

No notice of the assignment of said judgment was given to the judgment debtor until after the institution of the insolvent proceeding, but on July 23, 1926, the Fourth & First National Bank gave written notice to the Fidelity & Guaranty Company of the assignment of said judgment, but it did not give any notice to the receiver, and the first notice that the receiver had of the execution of said assignment was when the decision was rendered in June, 1927.

The receiver contested said assignment and notified the Fidelity & Guaranty Company to this effect. After the decree in the Supreme Court the Fidelity & Guaranty Company, by agreement of all the parties, paid the amount of said decree and costs into the Supreme Court, where it was collected by the receiver to be held by him until the final determination of this contest, without prejudice to the rights of any of the parties.

The Fourth & First National Bank endeavored to collect the amount due it by the Peoples Bank & Trust Company out of the collateral, but after exhausting all of the collateral, except this judgment, the Peoples Bank & Trust Company owed it a sum of between $15,000 and $20,000, most of which it will lose because the receiver will not realize enough from the assets of the Peoples Bank & Trust Company to pay more than from three to eight per cent of the indebtedness of that Bank.

Hence, on June 16, 1928, the Fourth & First National Bank filed the petition in this cause to reach the proceeds of said judgment under said assignment.

The receiver filed an answer, resisting the petition and insisting that the assignment of the judgment was not valid because the president and assistant-cashier of the Bank were not legally authorized to execute the transfer, which was made without consideration, for the purpose of giving the Fourth & First National Bank a preference after its insolvency, and that the transfer was void for the further reason that the Chancery decree had been vacated on appeal and was therefore not assignable, and that the assignment had not been consummated by giving notice to the judgment debtor until after the judgment had been impounded for the benefit of the creditors by the insolvency proceeding.

Proof was taken on the petition and several of the facts were stipulated. As above stated, the Chancellor dismissed the petition for the reason that notice was not given to the judgment debtor until after the judgment was impounded by the insolvency proceeding.

After a careful examination of the record and the authorities on the subjects, we are of the opinion that none of the assignments of errors is well taken and that all of them must be overruled.

In Tennessee a judgment may be assigned, the same as any other chose in action, but in order to effectuate the assignment notice to the judgment debtor is necessary, as is reviewed in the notes to Shannon's New Code of Tenn., sec. 3516, notes 37 to 67. A judgment may be assigned and the title thereto perfected in the assignee by notice to the judgment debtor of the fact of such assignment. Clodfelter v. Cox, 1 Sneed, 337. Notice is not necessary as between the parties. 5 C. J., 933-4; Smith v. Hubbard, 85 Tenn., 306, 2 S. W., 569. But notice is necessary as against the judgment debtor and the creditors of the assignor. 5 C. J., 973, note 80; Clodfelter v. Cox, supra. But the assignment is not complete so as to vest title in the assignee until notice to the debtor is given. See Peters v. Goetz, 136 Tenn., 257, 260, 188 S. W., 1144. We hold that the assignment was not complete without notice to the debtor and the assignee did not take the title to the judgment as against the judgment debtor and as against the creditors of the assignor. Hence, the first assignment of error must be overruled.

The second assignment of error, to the effect that the insolvency proceedings and the appointment of a receiver did not impound this judgment so as to give the general creditors priority over the assignee, presents a much more serious proposition. But after a careful search of the authorities we are of the opinion that the assignment not having been completed by notice and the title to the judgment not having passed by the assignment, the insolvency proceedings having been instituted before notice was served on

the judgment debtor, the judgment was a part of the assets which became a trust fund for the payment of the general creditors.

Under the general banking act of 1913, chapter 20, the appointment of a receiver and the filing of a bill to wind up the Bank as an insolvent corporation, is a special statutory insolvency proceeding, and the court secures full jurisdiction to adjust all interests and demands, legal and equitable, and it controls all controversies affecting the receivership and the winding up of the insolvent corporation. 7 C. J., 735.

Where the Superintendent of Banks takes possession of the assets of an insolvent bank and files a bill to wind up the bank as an insolvent corporation, its assets are not subject to attachment by creditors. See 7 C. J., p. 735, sec. 500, and p. 742, sec. 521; 7 R. C. L., 762, sec. 777, note 1. A bill to wind up an insolvent corporation creates an equitable lien on the assets in favor of the creditors. See 14A C. J., 933, sec. 3136.

Mr. Vartanian in his work on "The Law of Corporations in Tennessee," 277, has made an admirable statement of the law on this subject:

"In Tennessee, it is settled that the property of a private corporation is not charged by law with any direct trust or specific lien in favor of general creditors, and such a corporation, so long as it is in the active exercise of its functions, may exercise as full dominion and control over its property as an individual; and that a creditor, while the corporation is a going concern, although actually insolvent, is entitled to pursue the ordinary legal and equitable remedies for the enforcement of his claim. (Buchanan v. Barnes, 34 S. W., 425; McClaren v. Union Roller Mill Co., 95 Tenn., 696, 35 S. W., 88; Marr v. Bank, 4 Coldw., 471.) But when a corporation is dissolved, or determines to discontinue the prosecution of its business, or makes a general assignment, or commits any other overt act indicative of positive and assured insolvency, its property is thereafter affected by an equitable lien or trust for the benefit of all of its creditors, and individual creditors may be restrained by injunctions against the appropriation of corporate assets to the payment of their claims. (McClaren v. Roller Mill Co., supra; Buchanan v. Barnes, supra; Voightman & Co. v. So. R. Co., 123 Tenn., 452, 131 S. W., 982.) Before such an overt act of insolvency and discontinuance of its business, an attachment of the assets of the corporation by some of its creditors secures them priority over other creditors, although the corporation subsequently commits a decisive act of insolvency, as e. g., by general assignment and cessation of business. (Bank v. Lumber Co., 91 Tenn., 12, 18 S. W., 400.) But after such an overt act of insolvency

and discontinuance of its business, no lien, voluntary or involuntary, can be acquired on the corporate property by any creditor, which will prejudicially affect the interests of the other creditors, for then the corporate assets become a trust fund for all its creditors. (Willis v. Mann Const. Co., 145 Tenn., 318, 236 S. W., 282; Tradesman Pub. Co. v. Knoxville Car Wheel Co., 95 Tenn., 634, 32 S. W., 1097, 31 L. R. A., 593; Smith v. St. Louis Mut. Life Ins. Co., 3 Cooper's Chancery, 502, 504). Thus in Memphis Barrel Co. v. Ward (99 Tenn., 172, 42 S. W., 13), where a corporation had suspended business and refused to accept orders or otherwise exercise its functions, and its directors had, by resolution, solemnly declared its insolvency and inability to further carry on its business, and had instructed its president to have a general creditors' bill filed for the administration of its affairs and distribution of its assets, it was held, that from the time of such resolution and instruction, the assets of such insolvent corporation became a trust fund for the benefit of all its creditors, and that no one creditor was entitled to priority of satisfaction of his claim out of the corporate assets, notwithstanding his effort to fix a lien by the levy of an execution."

Under such state of facts, after the corporation becomes insolvent and ceases to be a going concern, its assets are not subject to attachment. Levins v. Peoples Groc. Co., 38 S. W., 733; Voightman & Co. v. So. R. Co., supra.

It will be observed that the trust fund doctrine adopted in Tennessee is broader than the qualified view on the subject adopted in other states. 8 Fletcher Cyc. Corp., secs. 5027-5040.

It is strenuously insisted by appellant that this proposition was definitely settled in the case of Maryland Casualty Co. v. S. S. McConnell, Supt., 148 Tenn., 656, 257 S. W., 410, wherein it was held that the appointment of the Superintendent of Banks as a receiver did not vest the title of the Bank's assets in the receiver, and that he merely held the possession of the property without title or lien upon it.

The holding in that case in no way affects the question here involved. That case involved the question of subrogation of a bonding company to the right of the State to preferential payment of claim against an insolvent bank. If the receiver had been a statutory receiver and had acquired the title of the bank's property, or if a creditor or particular creditors had attached the assets and had acquired a lien in favor of certain creditors, then the State would have had no priority that would have overridden the lien of the attachment or the title of the trustee. Peoples' Nat'l. Bank v. Corse, 133 Tenn., 720, 182 S. W., 917. But, on the other

hand, if the receiver acquired no title or held the assets as a common fund for all the creditors, then the State by virtue of its sovereignty had priority over such common creditors. Hence, it became necessary for the court in that case to determine whether the receiver had acquired title to the property so as to defeat the sovereign rights of the State, and it was held that he did not acquire title or a special lien so as to defeat the sovereign right of the State. The question of whether its assets had become affected with an equitable lien or trust for the benefit of all of its creditors, was immaterial and not raised in that case. In that case the assets were a trust fund for the payment of the common creditors, but the court held that the State had a priority by virtue of its sovereignty, and as the Casualty Company had paid the claim it should be subrogated to the rights of the State; hence, that case is not an authority on this proposition at all.

The trust fund theory has been modified and repudiated in several states, but it is too well settled in Tennessee for dispute.

Many of the cases cited by appellant on the proposition that a receivership and insolvency proceedings did not fix an equitable lien on the property, and that notice to the judgment debtor was not necessary, are not applicable in Tennessee, for the reason that it has been held in most of the states that notice to the judgment debtor is not necessary to perfect the title in the assignee, provided notice of the assignment is given to the debtor in time to permit him to disclose the assignment in his answer. But it has been held in Tennessee and three other states that an assignment is not complete so as to vest title to a chose in action as against creditors of the assignor without notice to the judgment debtor. 5 C. J., 972-3, sec. 163.

An insolvency proceeding either under the special banking Act, or the insolvency of an estate of a decedent where the insolvency has been suggested and advertisement made, is an entirely different proceeding from that of a creditors' bill, or even of a general creditors' bill. In a creditors' bill it would have been necessary to have made the judgment debtor a party and to have impounded the judgment either by attachment or by properly describing it in the bill. See Dinsmore v. Boyd, 6 Lea, 689; Boorum & Peas Co. v. Armstrong, 37 S. W., 1095. But in an insolvency proceeding it is not necessary to specially describe the property in the bill or to attach it in order to impound it or affect it with an equitable lien or trust for the benefit of the creditors of the insolvent corporation.

In the case of Raht v. Warren, 5 Higgins, 115, it was held that the claims of the general creditors of an insolvent estate are superior to those of the holder of an unregistered mortgage exe-

cuted and delivered by the mortgagor but not recorded before the suggestion of insolvency and publication for creditors. Our Supreme Court had held otherwise in the case of Kinsey v. McDearmon, 5 Coldw., 392, which decision was cited with approval in the case of Gwynne v. Estes, 14 Lea, 662. But the Higgins case above quoted followed the principle laid down in Henderson v. McGhee, 6 Heisk., 55, and reviewed all of the cases on the subject, and the Supreme Court affirmed the decision in the Higgins case. While some doubt is expressed in the case of Hunt v. Curry, 153 Tenn., 28, 282 S. W., 201, we are of the opinion that the principle is sound. A mortgage is valid as between the parties without registration, but it is not valid as against the mortgagor's creditors. As long as he lives they have a right to impound the property covered by the unrecorded mortgage for their debts, and after he dies a suggestion of insolvency and the advertisement for creditors likewise impounds all assets for the benefit of his creditors. They are enjoined from instituting separate suits and from attaching the property. Their rights must be worked out in the insolvency proceeding, which attach upon suggestion of insolvency and the advertisement for creditors. On the same principles the special insolvency proceeding by the Superintendent of Banks under the special banking act should affect all of the corporate assets with an equitable lien.

The defence is made by the receiver that the president and assistant-cashier had no authority to execute the assignment of the judgment, is not well taken. They were authorized by the directors to execute this assignment. They had authority to execute the assignment. 7 C. J., 547-8; Cox v. Robinson, 82 Fed., 277.

The assignment was supported by sufficient consideration. The Peoples Bank received an additional loan of $10,000, put up some notes and agreed to assign this judgment as collateral. This was sufficient consideration. 5 C. J., 932-3.

The contention that the Peoples Bank was insolvent and that the assignment of this judgment was an overt act of insolvency, which should avoid the assignment, is not well made. The proof is uncontradicted that the Fourth & First National Bank officials, as well as the cashier of the Peoples Bank, did not know that the Peoples Bank was insolvent at the time. It was a going concern and its cashier thought it would continue in business; hence there is nothing in this proposition. See Vartanian's Law of Corporations in Tennessee, p. 277, and authorities cited.

The contention that the assignment of the decree of the Chancery Court was not valid because there had been a broad appeal which was pending in the appellate court, which vacated the decree, and

therefore there was nothing assignable at the time the assignment was executed, is not well made, for the reason that the right of action was assigned and a broad appeal had no effect upon the assignment. 5 C. J., 892-3, sec. 58; 34 C. J., 637, sec. 978; Rufe v. Commercial Bank, 99 Fed., 650 (affirming 92 Fed., 789); Shannon's New Code, sec. 3516, notes 60-67.

All the assignments of error having been overruled, the decree of the Chancellor dismissing the petition is affirmed.

The costs of the cause incident to the filing of this petition, including the cost of the appeal, is adjudged against appellant and the sureties on its appeal bond.

Faw, P. J., and DeWitt, J., concur.